UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:23CR00197(SRU) |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER DILELLA | : | March 21, 2024 |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

"I was 14 years old when I met Alex, and naive. It was online, late at night, and while my brain still attempts to suppress it all, I still remember each and every feeling that made itself known in my body. . . . While my mind has now quenched those preceding questions and commands, I can't help but remember what it felt like to sit there - myself exposed. And him? Well, fully clothed. I had no desire to do anything 'pleasurable' for myself. . . . Thinking about it now, I don't think there is a more crushing feeling for a 14 year old girl than to feel used and rejected. He took advantage, and when he was finished, I was useless. Absolutely useless. . . .

When all the memories flood back, I practically become paralyzed in shock. Dissociation has become something that is the most prominent response in my life and now happens every day. It takes everything out of me, and it takes the people I love to get me out of this state. When I become relieved of it, I am empty. This is what it is like for me every week. I am exhausted, and also suffer intense insomnia. When I do sleep, I'm tortured by nightmares of everything all over again."

Excerpts from the victim impact statement of Minor Victim LD; PSR ¶ 55.

In 2020 and 2021, Alexander Dilella repeatedly sought out young girls in their early teens and enticed them to engage in sex acts while livestreaming on camera with him, and he also enticed them to take sexually explicit photographs and videos of themselves to send to him. Dilella's communications with the girls were extremely aggressive, violent, manipulative, and incessant, putting immense pressure on young, impressionable girls to engage in sex acts for his pleasure. Many of the sex acts Dilella demanded involved the anus, which resulted in physical injury to at least one girl, who was only 13 years-old. In addition, Dilella possessed child pornography on his cell phone involving children as young as 4 to 7 years old. Based on this serious conduct, the

Government respectfully requests that the Court impose sentence between 132 and 156 months' imprisonment, followed by 20 years of supervised release.

## I.    BACKGROUND

### A.  Factual Background

The PSR includes a very detailed recitation of the facts, PSR ¶¶ 8-49, which the Government will not repeat here. The Government will instead summarize the relevant facts, while highlighting some of the most important details.

In 2020 and 2021, Dilella communicated online with at least nine minor girls using Snapchat, FaceTime, and other social media applications, to persuade, induce, and entice them to engage in sexually explicit conduct for the purpose of producing images, videos, and live transmissions of such conduct. Sometimes he was successful in his attempts and other times he was not. For example, Minor Victim JM was 13 years-old at the time of her communications with Dilella. At Dilella's request, she sent child pornography of herself to him via Snapchat and also engaged in sexually explicit conduct in real time over FaceTime with him. Dilella attempted to engage Victim JM's 11-year-old sister in the sexually explicit conduct, but Minor Victim JM refused to involve her little sister. PSR ¶¶ 9-10.

Minor Victim ES was 14 years-old at the time of her communications with Dilella. At Dilella's request, she sent him at least three videos and four images of child pornography of herself, and at his request she also engaged in sexually explicit conduct in real time over FaceTime with him. As part of Dilella's communications with Minor Victim ES, he called her a "child porn slave." PSR ¶¶ 23-29.

Minor Victim KF was 13 years-old at the time of her communications with Dilella. Dilella asked her to send him nude images of herself, but she refused. As part of Dilella's communications

with Minor Victim KF, Dilella told her that he was going to be "super rough with you later" and that she "might cry" because "I'm making you do anal." She then participated in livestreaming on FaceTime with Dilella, who instructed her to put a hairbrush in her anus, after which she told him how her anus was bleeding from what he made her do.  Minor Victim KF said that Dilella liked that she was young and talked about how small she was. PSR ¶¶ 30-34.

Minor Victim AA was 15 years-old at the time of her communications with Dilella. Minor Victim AA said that she met Dilella on a social media site called Wink, which she described as "Tinder for kids." At his request, she sent Dilella at least twelve images and two videos of child pornography. She also engaged in sexually explicit conduct in real time over FaceTime with him. Minor Victim AA described Dilella as "pushy" when she wanted to stop sending him nudes of herself and that he begged her to send them when she hesitated. She said that he always wanted more. PSR ¶¶ 35-36.

Minor Victim MM was 15 years-old at the time of her communications with Dilella. When Minor Victim MM told Dilella her age, he responded, "If you don't care idc [I don't care] too," and then he attempted to entice her to send child pornography to him, but she refused. They did livestream together on May 15, 2021. Minor Victim MM described Dilella as manipulative and perverted and said that he pressured her and begged her to send him sexual images of herself and that he "pouted" when she said no. PSR ¶¶ 37-39.

Minor Victim MS was 15 years-old at the time of her communications with Dilella. At Dilella's request, Minor Victim MS sent at least one naked image of herself on a bed to him. Minor Victim MS said that Dilella repeatedly demanded more images, but she refused. As part of their conversations, Dilella told Minor Victim MS, "I want to tie you up." PSR ¶¶ 40-41.

Minor Victim GS was 12 years-old and at the time of her communications with Dilella. At his request, she sent Dilella at least six videos and two images of child pornography of herself, in addition to child erotica images of her breasts. Law enforcement could not locate Minor Victim GS and thus did not interview her. PSR ¶ 42.

Minor Victim AC was 16 years-old at the time of her communications with Dilella. Dilella engaged in explicit sexual talk with her and attempted to obtain child pornography from her, but no such images or videos were recovered. As part of their communications, Dilella told her, "Daddy's gonna fuck you. I'm gonna hurt you. I'm gonna degrade you. . . . I'm gonna choke you while I'm fucking you . . . Then slap your pretty little face." PSR ¶¶ 43-45.

Minor Victim LD was 14 years-old at the time of her communications with Dilella. At his request, she sent Dilella at least 27 images and two videos of child pornography of herself. PSR ¶¶ 46-47. Minor Victim LD has submitted a victim impact statement to the Court.

Minor Victim RS was 16 years-old and at the time of her communications with Dilella. Dilella attempted to meet her in Stratford to engage in sex acts with him, but they could not agree on a location. When Minor Victim RS suggested that they meet in her basement, Dilella stated that he felt it was a "trap." Dilella also asked her to "send a nude for me," but she refused. PSR ¶ 48.

During his chats and live streams with Minor Victims JM, ES, KF, AA, MS, and MM, Dilella either sent the minors photographs of his penis and/or he showed them his penis during a live transmission on FaceTime. PSR ¶ 49.

Dilella also possessed five videos and one image of child pornography on his Apple iPhone. The videos involved children aged approximately 4 to 12 years-old being sexually abused through intercourse with adult men who are grabbing the child's ankles, wrists, or hips. One video involved a boy aged approximately 11 to 13 years-old engaged in sexually explicit activity. PSR ¶¶ 17-18.

4

### B.  Procedural Background

On March 5, 2022, the defendant was charged by complaint with Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity, Receipt of Child Pornography, and Possession of Child Pornography, all in violation of Title 18, United States Code, Sections 2422(b), 2252A(a)(2), and 2252A(a)(5). Doc. No. 1. On November 8, 2023, the defendant pled guilty to a two-count Information charging him with Receipt of Child Pornography (Count 1) and Possession of Child Pornography (Count 2), in violation of Title 18, United States Code, Sections 2252A(a)(2), and 2252A(a)(5). PSR ¶ 1. Count One of the Information alleged that the defendant knowingly received child pornography from multiple unnamed minors, known to the U.S. Attorney, from in or about 2020 through May 24, 2021. *Id.* Count Two of the Information alleged that the defendant knowingly possessed child pornography on May 24, 2021. Neither count included any file names or descriptions of the child pornography the defendant received and possessed. *Id.*

The maximum statutory penalty faced by the defendant on Counts 1 is 20 years' imprisonment with a mandatory minimum of 5 years. The maximum statutory penalty faced by the defendant on Count 2 is 20 years with no mandatory minimum. PSR ¶ 115.

### C.  Sentencing Guidelines

The parties entered a written plea agreement dated November 8, 2023. Doc. No. 77. In the plea agreement, the Government's position was that the defendant's total offense level is 43, assuming a criminal history category I, which resulted in a Guidelines term of life imprisonment that was capped at 480 months' imprisonment pursuant to U.S.S.G. §§ 5G1.1(a); 5G1.2, Application Note 3. *Id.* at 6-8.[1] The Government's calculation in the plea agreement used a cross-reference to Guideline § 2G2.1 because the offense involved enticing minors to engage in sexually

---

[1] In the plea agreement, the defendant did not agree with this calculation, but he did not propose a different one.

explicit conduct for the purpose of producing and transmitting live visual depictions of such conduct. *Id*. at 6; § 2G2.2(c)(1) and Application Note 7. Moreover, because the defendant enticed nine minor victims, the Government applied Guideline § 2G2.1(d), which states, "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." *Id.* at 7.

The PSR, however, calculated a total offense level of 39, which, assuming a criminal history category of I, results in a Guidelines range of 262 to 327 months of imprisonment. PSR ¶¶ 74, 116. The PSR did not apply Guideline § 2G2.1(d), which accounts for the difference in Guidelines ranges. While the Government agrees with the factual statements contained in the PSR, the Government disagrees with the PSR's calculation of the defendant's total offense level for the reasons set forth below.

### 1. The Offense of Conviction Includes the Receipt of Images from All Nine Minor Victims.

The Guidelines calculation in the PSR is based solely on the defendant's receipt of child pornography from Minor Victim JM, and it does not include the defendant's receipt of child pornography from the eight other Minor Victims. PSR ¶¶ 50-51. In declining to include the defendant receipt of images involving the other eight victims, the PSR incorrectly analyzed the defendant's criminal conduct with respect to those victims as "relevant conduct," rather than as part of the offense of conviction, concluding that "even though Mr. Dilella enticed multiple victims to send him child pornography, the court cannot apply 'expanded' relevant conduct at §1B1.3(a)(2) to consider acts of Mr. Dilella that are the same course of conduct or common scheme or plan as the offense of conviction for receipt of child pornography." PSR at ¶ 50. The PSR's calculation is incorrect.

The Sentencing Guidelines defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3[.]" U.S.S.G § 1B1.1, Application Note 1(I). The "offense of conviction" means "the offense charged in the count of the indictment or information of which the defendant was convicted." U.S.S.G. 1B1.2(a). Relevant conduct is defined in U.S.S.G. § 1B1.3.

Here, the "offense of conviction" includes the receipt of child pornography from all nine Minor Victims. Count One charges the defendant with receiving images of child pornography of multiple unnamed minors between 2020 and May 24, 2021. *See* Information, Doc. No. 73. In pleading guilty, the defendant expressly admitted to conduct involving all nine Minor Victims. *See* Plea Agreement at 13, Doc. No. 77 (Stipulation of Offense Conduct, in which the defendant admitted that, during the charged time period, the defendant received child pornography of all nine Minor Victims). Thus, the Court need not determine whether the defendant's conduct with the eight other Minor Victims constitutes relevant conduct to his receipt of child pornography from Minor Victim JM because all of that conduct is part of the defendant's offense of conviction.

Moreover, the applicable section of the Sentencing Guidelines involving multiple victims, § 2G2.1(d)(1), provides that "If the offense involved the exploitation of more than one minor, Chapter Three, Part 3 (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." This makes sense because an offender who sexually exploits multiple minors is more culpable than one who targets only one. The Guidelines offense level should reflect this difference.

Applying Guideline § 2G2.1(d)(1) and this framework here, the Court must treat all nine Minor Victims as if each minor had been contained in a separate count of conviction, and then calculate the offense level as to each victim separately. *See* U.S.S.G. § 1B1.1(a)(4). The Court

must then apply Part D of Chapter 3 to the pseudo counts for each victim to determine a combined offense level. U.S.S.G. § 3D1.4.

In this case, the Guideline calculation set forth in the plea agreement is correct. *See* Plea Agreement at 6-8. As described in detail in the plea agreement, four victims have an offense level of 42 (Minor Victims JM, ES, KF, and AA). Each of those victims count as a separate Group and each receives one Unit under U.S.S.G. § 3D1.4(a). Two victims have an offense level of 38 (Minor Victims GS and LD), which is between 1 and 4 levels less serious than the highest offense level of 42. Each of those victims count as a separate Group and each receives one Unit under U.S.S.G. § 3D1.4(a). Two victims have an offense level of 36 (Minor Victims MM and MS), which is between 5 and 8 levels less serious than the highest offense level of 42. Each of those victims count as a separate Group and each receives one-half Unit under U.S.S.G. § 3D1.4(b). One victim has an offense level of 34 (Minor Victim AC), which is between 5 and 8 levels less serious than the highest offense level of 42. That victim counts as a separate Group and receives one-half Unit under U.S.S.G. § 3D1.4(b). There is a total of 7 ½ Units. Pursuant to U.S.S.G. § 3D1.4, when there are more than 5 Units, an additional 5 levels are added to the offense level. Therefore, the defendant's combined offense level under U.S.S.G. § 3D1.4 is 47.

Three levels are subtracted for acceptance of responsibility. U.S.S.G. § 3E1.1. This results in an adjusted offense level of 44, which is treated as an offense level 43 pursuant to U.S.S.G. § 5, Part A, Application Note 2. When combined with Criminal History Category I, the result is a Guidelines term of life imprisonment. Given the applicable statutory maximum sentence of 20 years on each count of conviction, the Guidelines term is capped at 480 months' imprisonment pursuant to U.S.S.G. §§ 5G1.1(a), 5G1.2, Application Note 3.

**2. The Relevant Conduct Analysis Set Forth in the PSR is Not Consistent with the Guidelines, the Charging Document, or the Plea Agreement.**

In rejecting the calculation in the plea agreement, the PSR calculation improperly narrows the "offense of conviction" to the conduct involving the Minor Victim that produced the highest guidelines offense level, in this case Minor Victim JM. *See* PSR ¶ 50. The PSR then considers whether the conduct against the other eight Minor Victims qualify as relevant conduct and concludes that it does not. *Id.*

This interpretation is inconsistent with the Sentencing Guidelines and the terms of the charging document and plea agreement, which, as noted above, expressly include the receipt of all child pornography between 2020 and May 24, 2021, as part of the offense of conviction. In support of its approach, the PSR incorrectly relies on U.S.S.G. § 1B1.5, Application Note 3.[2] This Application Note provides that, when applying a cross-reference, if the conduct involved one or more other offenses, the most serious such offense is to be used. It does not restrict the calculation of the offense itself. Moreover, by applying U.S.S.G. § 1B1.5 here, the PSR completely fails to consider—indeed it does not even mention—U.S.S.G. § 2G2.1(d), which contains an explicit instruction to treat each minor as if he or she was in a separate count of conviction. *See United States v. Rosenow*, 50 F.4[th] 715, 740 (9th Cir. 2022) (affirming district court's application of § 2G2.1(d) after using the cross-reference in § 2G2.2(c)(1) when the defendant was charged with

---

[2] U.S.S.G. § 1B1.5, Application Note 3 ("A reference may direct that, if the conduct involved another offense, the offense guideline for such other offense is to be applied. Consistent with the provisions of §1B1.3 (Relevant Conduct), such other offense includes conduct that may be a state or local offense and conduct that occurred under circumstances that would constitute a federal offense had the conduct taken place within the territorial or maritime jurisdiction of the United States. Where there is more than one such other offense, the most serious such offense (or group of closely related offenses in the case of offenses that would be grouped together under §3D1.2(d)) is to be used. For example, if a defendant convicted of possession of a firearm by a felon, to which §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) applies, is found to have possessed that firearm during commission of a series of offenses, the cross reference at §2K2.1(c) is applied to the offense resulting in the greatest offense level.")

possession of child pornography videos showing himself engaging in sexually explicit conduct with four different minors); *see also United States v. Martin*, 291 F. App's 765, 769 (6th Cir. 2008) (holding that the district court erred by *not* applying § 2G2.1(d) for multiple victims when applying the cross-reference in § 2G2.2(c)(1)). The PSR's interpretation erases Minor Victim ES, Minor Victim KF, Minor Victim AA, Minor Victim MM, Minor Victim MS, Minor Victim GS, Minor Victim AC, and Minor Victim LD from the Guidelines calculation. And the PSR's interpretation completely eviscerates the purpose of § 2G2.1(d), which is to provide additional punishment for defendants who exploit more than one minor as part of his or her offense of conviction or relevant conduct.

3. **The PSR Does Not Point to Any Guidelines Changes to Support the Guidelines Calculation Recommended in this PSR – Even Though it a Serious Deviation from Prior Guidelines Calculations Approved by this Court and/or Upheld by the Second Circuit in Other Similar Cases**.

Finally, the Guidelines calculation recommended in this PSR is inconsistent with prior Guideline calculations upheld by the Second Circuit and this Court. For example, in *United States v. Fasold,* 3:20cr193(MPS) PSR ¶¶ 73-103 (the PSR relied on U.S.S.G. § 2G2.1(d) to calculate the advisory guideline range and separately analyzed the guidelines for each of the 27 minor victims whose images Fasold recorded during the charged time period noting that "…if the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction. These victims are not grouped because they are separate victims with separate harm."). Similarly, in *United States Ahders*, 622 F.3d 115 (2d Cir. 2010), the Second Circuit affirmed the district court's Guidelines calculation. In that case, although the defendant pleaded guilty only to one count involving one victim, the PSR concluded that the defendant had exploited three minors and, pursuant to U.S.S.G. § 2G2.1(d)(1), treated the exploitation of each child as a separate count of

conviction, calculated the offense level for each victim separately, and then applied U.S.S.G. § 3D1.4. Although the issue in *Ahders* was whether the conduct involving the additional victims was relevant conduct to the offense of conviction, which is not at issue here because the offense of conviction includes all nine Minor Victims, the case is nonetheless instructive here because it upholds the application of pseudo counts under § 2G2.1(d)(1), which the PSR completely disregards here.

Other than a vague reference to "instruction from United States Sentencing Commission," the PSR provides no explanation for the change in determining how the Guidelines for counts involving multiple victims should be calculated. Significantly, there have been no changes to the Guidelines, the Commentary, or Application Notes to explain this change. In fact, the Sentencing Commission's Report on Federal Sentencing of Child Pornography Production Offenses (the "Report"), describes that the multiple count rules in §3D1.1 through § 3D1.5 are to be used when applying § 2G2.1 for offenders with multiple victims. *See* The Report at 13 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf, at 13 (last visited March 21, 2024) (stating that, in cases involving multiple victims, "an offender's offense level could be increased to account for harm to additional victims, even if the offender is convicted only of a single count of production").[3] As an example of this analysis, the Report cites *United States v. Peck,* 496 F.3d 885, 890 (8th Cir. 2007). *Id.* at n. 20. In *Peck*, the Eighth Circuit affirmed a sentence calculation in which the district

---

[3] This Report is relevant to the defendant's conduct because his conduct qualifies as production of child pornography; indeed, as the report itself recognizes, "[A]n increasing proportion of production offenders exploited victims remotely through use of the internet or mobile devices. For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform." *Id.* at 5. Moreover, the Report recognizes that "some [offenders] are sentenced under § 2G2.1 as a result of a cross-reference from another guideline," including receipt of child pornography under § 2G2.2 as an example. *Id* at 14.

court applied Chapter Three of the Guidelines as though each of the three minors that Peck exploited had been contained in a separate count. The Eighth Circuit concluded that the sentence was reasonable and that there was no impermissible double counting because the enhancements addressed separate harms, that is, an enhancement "for the number of minors Peck exploited" and an enhancement "for the fact that Peck exploited the minors on multiple occasions." *Peck* at 891.

The Report further recognized that "some [offenders] are sentenced under § 2G2.1 as a result of a cross-reference from another guideline," including receipt of child pornography under § 2G2.2 as an example. *Id* at 14. In its analysis about cross-references to § 2G2.1, the Report did not conclude that Application Note 3 to § 1B1.5 somehow prevents the application of the multiple count rules in §3D1.1 through § 3D1.5 when applying § 2G2.1. *Id.* at 13-14. Indeed, the Report does not mention § 1B1.5 at all.

Finally, the Government notes there is a significant practical benefit to the Guidelines analysis set forth in the Plea Agreement and which has been the practice in this District. This benefit is one that inures to the defendant because it allows the defendant to plead to (1) one count that could encompass multiple victims, and (2) a charge with a lower mandatory minimum sentence (or no mandatory minimum sentence at all) while still applying the cross-reference to § 2G2.1 when appropriate. Under the Guidelines analysis advanced in the PSR, in order to preserve the rights of all victims in multiple-victim cases, the Government may need to present a Grand Jury with separate counts for each victim and insist on a plea to charges that apply § 2G2.1 directly without the use of a cross-reference. As a result, defendants may be exposed to much higher statutory maximum and minimum sentences.

### III.    Argument

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). The Section 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.*

Based on a consideration of the Section 3553(a) factors, as discussed below, the Government submits that a below-Guidelines sentence of 132 to 156 months' imprisonment  is

reasonable and appropriate in this case, and no greater than necessary to further the goals of sentencing.

### A.       The Guidelines Range Must Be Considered Under *Booker*

Under binding precedent, this Court must consider the Sentencing Guidelines. *See, e.g., Fernandez*, 443 F.3d at 26. The defendant, however, argues that the Sentencing Guidelines applicable to child pornography offenses are flawed and unreliable, citing *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). A reliance on *Dorvee* is misplaced given that this case involves repeated enticement of numerous minor victims to engage in sexually explicit activity, not simply possession or receipt of child pornography. First, *Dorvee* involved the application of Guideline § 2G2.2. It did not involve or address § 2G2.1, which governs the defendant's conduct here. Second, the Second Circuit has repeatedly held that *Dorvee* does "not stand for the proposition that nearly any sentence for child pornography above the mandatory minimum is substantively unreasonable." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020). The Second Circuit explained that its warning in *Dorvee* that a "straightforward application of the sentencing Guidelines can lead to unreasonable sentences" arose in the "limited context" and "narrow circumstances" present in that case, which involved, among other things, a defendant who – unlike [the defendant] – "had no contact with children," even virtually. *Id.* at 64–65 (internal quotation marks omitted); *see also United States v. Rafferty*, 529 F. App'x 10, 13 (2d Cir. 2013) (noting that concerns present in *Dorvee* were not present because "[defendant's] production of child pornography . . . is distinguishable from the conduct in *Dorvee*").

The defendant also argues that, in this case, some of the enhancements are "unreasonably duplicative," but the only alleged redundancy is that the increase of two levels for the commission of a sex act is already accounted for in the base offense level of 32 for § 2G2.1. Def. Memo. at 13.

That is incorrect. This same Guideline applies in situations where an undercover officer poses as a minor, or situations where a defendant attempts to entice a minor to engage in sexual activity but is unsuccessful. In those cases, no sex act occurs, and the two-level enhancement would not apply. In addition, this same Guideline applies where a defendant produces child pornography that is lewd and lascivious but does not involve a sex act. Again, the two-level enhancement would not apply. While it is a fair argument to disagree with the base offense level being relatively high at 32, the argument that the base offense level is redundant is simply incorrect.

### B. Nature, Circumstances, and Seriousness of the Offense

- You're a "child porn slave." PSR ¶ 25 (Dilella to a 14-year-old girl on March 7, 2021).

- "Imma be super rough with you later. Like you might cry." "I'm making you do anal." "Fine, you're my little bitch." "You little cumslut you better." "Slap you around." PSR ¶ 30 (Dilella to a 13-year-old girl on November 26, 2020, who bled from her anus after Dilella manipulated her into inserting a hairbrush into her anus on camera for him).

- "Pinch ur nipples and twist them. Make it hurt." "Choke and make your eyes water." "Ur such a fucking whore." PSR ¶ 10 (Dilella to a 13-year-old girl on October 23, 2020).

- "I want to tie you up." PSR ¶ 40 (Dilella to a 15-year-old girl on April 24, 2021).

- "Daddy's gonna fuck you. I'm gonna hurt you. I'm gonna degrade you." "I'm gonna choke you while I'm fucking you." "Then slap your pretty little face." PSR ¶ 43 (Dilella to a 16-year-old girl on March 7, 2021).

These quotes are a sampling of the types of things that the defendant said to the nine Minor Victims when he coerced and enticed them into engaging in sexually explicit activity for him, either while livestreaming on camera or by sending him images and videos via Snapchat or other similar application. The threats and violence in these quotes are terrifying and horrific, yet this was the tone of nearly all of the defendant's conversations with the Minor Victims. Without a doubt, the defendant's crimes were extremely serious and harmed numerous minor girls.

A common theme emerged when each of the Minor Victims were interviewed: Dilella's pressure on them to engage in sex acts for him was incessant, even after they repeatedly said no. He would not take no for an answer, and he manipulated them by pretending to be hurt by their refusals and by telling them that they were being mean to him by refusing. While an adult may have the fortitude to resist such manipulation, young girls in this age range simply do not. That is exactly why the defendant targeted them. He targeted children in particular by using online platforms specifically designed for them. For example, he used a social media application called "Wink," which one of the Minor Victims described simply as, "Tinder for kids." PSR ¶ 36. The defendant was also obsessed with the ages of the Minor Victims and their body parts being "little." The chats, along with the videos discovered on the defendant phone, make clear that the defendant was sexually attracted to children and targeted them. This was not accidental or unintentional.

In evaluating the seriousness of the offense, *United States v. Muzio*, is instructive. 966 F.3d 61 (2d Cir. 2020). In *Muzio,* the Second Circuit affirmed as substantively reasonable a 420-month sentence imposed on a defendant who convinced underage victims to send him sexually explicit images and videos of themselves. 966 F.3d 61 (2d Cir. 2020). Muzio's offense did not involve any physical contact. The dissent in *Muzio* criticized the Guidelines and suggested ten alternative factors that should be used. *Id.* at 78 (J. Underhill dissenting):

1. Did the defendant engage in violence? The worst child pornography production cases involve the filming of child rape; forced or coerced sex acts are among the most serious offenses imaginable.

2. What is the nature of the sexual contact involved? The conduct ranges from no actual contact to touching of genitalia to full penetration or oral sex. Repeated conduct (multiple times or multiple victims) is substantially more serious than a single episode.

3. How was the pornography produced? Was the defendant filming his own interaction with the victim, filming another's interaction, passively recording

through a hidden surveillance device, or soliciting victims' selfies? Did the defendant participate alone or with others?

4.   What was the extent of the distribution or use of the images? Was there a commercial exploitation? How wide was distribution on the internet? Were the images used as currency or to barter?

5.   Did the defendant engage in deceit or trickery, including identity misrepresentation? Fraudulently inducing "voluntary" participation of the victim reflects serious wrongdoing.

6.   How many films or images did the defendant create? Production of a large volume of material reflects consciousness of wrongdoing.

7.   How old was the victim or victims? The age of a victim can dramatically affect the crime's seriousness; in general, the younger the more serious, with crimes involving very young victims being especially horrific.

8.   How many victims were there? The number of victims and the length of time over which the conduct occurred both can reflect seriousness.

9.   What relationship/responsibility did the defendant have vis-à-vis the victim? Was the defendant a parent, guardian, relative, babysitter, or person with authority over the victim?

10.   What was the intellectual capacity of the victim? Was the victim mentally disabled, drugged, or too young to resist/understand?

Here, an analysis of these factors shows that the defendant's conduct falls somewhere in the middle of the spectrum. On the aggravating side, the defendant enticed nine different victims, and attempted to arrange a meeting with a tenth victim who lived in Stratford. The conduct was repeated, occurring numerous times in 2020 and 2021. The ages of the victims were 12 to 16, though the defendant asked one victim to involve her younger 11-year-old sister. And the defendant possessed child pornography videos depicting children as young as four years old. The nature of the conduct was also severe, often including the defendant's instructions to the victims to insert objects into their anus, which resulted in a physical injury to one minor. The defendant did not engage in violence, but he threatened violence as described in detail above. The defendant

also committed his crimes by livestreaming with the victims, meaning that they appeared on camera with each other in real time, and there is evidence that he spoke on the phone with some victims. This is an aggravating factor in relation to crimes involving chats and emails only because the defendant's pressure and manipulation is far more powerful in real time than it is through written communications. As to the amount of child pornography produced, there were 13 videos of four different victims, 46 images of 5 different victims, and livestreaming with 4 different victims. *See* Plea Agreement, Stipulation of Offense Conduct And Relevant Conduct; Doc. No. 77 at 14-15.

On the mitigating side, the defendant did not meet any of the victims in person, and thus he did not engage in any in-person violence against them. There is no evidence that he distributed any of the CSAM that he produced. There was no evidence that he engaged in deceit or trickery. The defendant had no position of authority over the victims. And the victims were not mentally disabled, drugged, or too young to understand. In sum, analysis of the *Muzio* factors points to a sentence above the mandatory minimum sentence, but below the Guidelines term of 480 months' imprisonment.

### C.   History and Characteristics of the Defendant

There is no doubt that the defendant had a very troubling, unstable, and abusive childhood, which is thoroughly described in the PSR and in the defendant's memorandum in aid of sentencing. The Court should consider the defendant's background in sentencing him, and the Government does not object to a downward departure pursuant to Guideline § 5H1.3. The Government, however, disagrees with the extent of the departure sought by the defendant because of serious concerns regarding the defendant's future dangerousness to children.



Thus, while the defendant's underlying trauma negatively impacted his life, it did not cause

him to suddenly become sexually attracted to children and to act upon those feelings by seeking

them out online, nor do they mitigate the suffering and psychological damage that was inflicted upon the defendant's victims.[4] ███████████████████████████████

████████████████████████████████ He was high functioning in that he has had a stable work history and was a self-described social media influencer online. His online chats with the victims, while deeply disturbing in content, show that he is an effective communicator who is controlling and manipulative as opposed to a meek and respectful follower who poses no risk to others. In addition, the studies cited by the defendant regarding dangerousness and recidivism actually undermine his argument that he is not a danger because the defendant demonstrates the "situational factors" warned about in those studies. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ In short, Dilella is not your typical child pornography offender. He is *more dangerous* than the typical offender.

### D.    Avoiding Unwarranted Sentencing Disparities

While it is difficult to compare the severity of cases involving the sexual abuse of children, one instructive case is *United States v. Travis McCoy*, 3:18CR00132(MPS). In that case, McCoy pled guilty to enticement of a minor to engage in illegal sexual activity based on online chats and livestreaming videos where he engaged in mutual masturbation with four boys ranging in age

---

[4] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████

between 9 and 14. ██████████████████████████████████████████
████████████████████████████████████████████████████████████ In that case, Judge Shea sentenced McCoy to 156 months' imprisonment, followed by a lifetime term of supervised release.

### E.    The Need to Protect the Public from Further Crimes of the Defendant

As described in detail above, the defendant poses a serious risk of harm to the public. The need to protect children from the defendant is of paramount importance in this case.

### F.    Victim Impact Statements

The Government has submitted two victim impact statements to the Probation Office, and the mother of at least one of the defendant's victims intends to participate remotely at the sentencing hearing.

### G.    Restitution

The Government is seeking restitution in the amount of $24,000, pursuant to 18 U.S.C. § 2259, which amounts to $3,000 each to eight of the victims described in the PSR. PSR ¶ 53. The defendant agreed as part of the plea agreement that he would pay $21,000 in restitution by the date of the sentencing hearing. Doc. No. 77 at 4. Since the signing of the plea agreement, one additional victim made a restitution request, which is the reason for the $3,000 discrepancy between the restitution amount in the plea agreement ($21,000) and the amount being requested now ($24,000). The defendant did not object to paragraph 53 of the PSR.

## III.    Conclusion

For the reasons outlined above, the Government respectfully requests that the Court impose a sentence between 132 and 156 months' imprisonment, followed by a 20-year term of supervised release.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Angel M. Krull*
ANGEL M. KRULL
ASSISTANT UNITED STATES ATTORNEY
Federal Bar no. phv11042
157 Church Street, 25th Floor
New Haven, CT 06510
203-821-3700

CERTIFICATION OF SERVICE

Pursuant to the Court's designation of this matter as an electronically filed case, and in accordance with the requirements for certification of service in such cases, the undersigned certified that the foregoing document was filed electronically on this 21st day of March, 2024. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Angel M. Krull*
ANGEL M. KRULL
ASSISTANT UNITED STATES ATTORNEY